UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | CASE NO. C15-1039-JCC |
| Plaintiff, | ORDER GRANTING DEFENDANT GROUND SUPPORT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF SEATTLE, CORE DESIGN, INC., and GROUND SUPPORT, | |
| Defendants. | |
| CITY OF SEATTLE, | |
| Third-Party Plaintiff, | |
| MALCOLM DRILLING CORPORATION, INC., | |
| Third-Party Defendant. | |

This matter comes before the Court on Defendant Ground Support's motion for summary judgment and sanctions (Dkt. No. 83). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for summary judgment and DENIES the motion for sanctions for the reasons explained herein.

ORDER GRANTING DEFENDANT GROUND
SUPPORT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 1

## I.    BACKGROUND

The facts of this case have been described in a previous order. (Dkt. No. 74 at 2–5.) In short, Rushforth Construction Company hired Third-Party Defendant Malcolm Drilling to furnish labor and materials for the bank shoring and underpinning work in the project at issue. (Dkt. No. 54 at ¶3.1.) Malcolm hired Ground Support to create a shoring plan. (*Id.* at ¶ 3.8.) The plans from each company did not include a side sewage line. (Dkt. No. 84-6 at 4–5.) Ultimately, the project caused damage to the not-included side sewage line, which was discovered in October 2012, and Rushforth paid for the repairs. (Dkt. No. 54 at ¶¶ 3.10, 3.13–3.14.) Plaintiff Liberty Mutual indemnified Rushforth, and Rushforth assigned all of its rights to Liberty Mutual. (*Id.* at ¶3.15.)

### A. Ground Support's Contract with Malcolm

As described in the previous order, there was a question as to whether Ground Support's Master Agreement or Malcolm's Purchase Order governed this dispute. (*See* Dkt. No. 74 at 2–4.) After conducting discovery, the following has been established.

Ground Support has been doing work for Malcolm since approximately 1994 and has prepared approximately 75–100 shoring plans/proposals for Malcolm. (Dkt. No. 84-11 at 3.) In 2010, Ground Support renegotiated its terms and conditions, referred to as the Master Agreement, with Malcolm's president, Al Rusband.[1] (Dkt. No. 67 at ¶ 7; Dkt. No. 84-12 at 4.) The Master Agreement contains a Limitation of Remedies clause that provides a one year time period from the substantial completion of Ground Support's services to bring a claim arising out of Ground Support's services. (Dkt. No. 58-1 at 8.) The Master Agreement also contains an express disclaimer of any warranties made in connection with Ground Support's services. (*Id.* at

---

[1] Liberty Mutual quibbles with the term "Master Agreement" because the proposals are entitled "Terms and Conditions." (Dkt. No. 88 at 13.) However, this is irrelevant because Liberty Mutual referred to these Terms and Conditions as the Master Agreement it its complaint. (Dkt. No. 54 at ¶¶ 9.2, 9.3, 9.4, 9.5.) The Court will not entertain this argument any further. The terms are used interchangeably and refer to the same set of contract provisions.

2.) The renegotiated Master Agreement was sent to Malcolm for this 2011 project proposal. (Dkt. No. 67-2.) Malcom did not return a signed copy of the Master Agreement to Ground Support. (Dkt. No. 84-11 at 3.) However, it was common for Ground Support to perform work for Malcolm without a signed proposal being returned. (Dkt. No. 84-11 at 3.)

To process a payment, Malcolm creates a Purchase Order, which contains different terms than the Master Agreement. (Dkt. No. 84-11 at 4.) Liberty Mutual claims the Purchase Order includes terms and conditions that require Ground Support to warrant its work and indemnify Malcolm for claims arising out of it. (Dkt. No. 65-3 at 9.) The Purchase Order does not contain a one-year limitation period. However, in response to a request for production for all documents reflecting Malcolm's transmittal of a Purchase Order for this project, Malcom responded "there is no record of transmittal . . . to Ground Support." (Dkt. No. 84-14 at 11.) Malcolm's Corporate Senior Vice President John Roe testified that it was "reasonable" to say "Ground Support does not perform work for Malcolm subject to any terms and conditions contained in a Malcolm Purchase Order that never gets sent." (Dkt. No. 84-12 at 6.)

**B.  The Shoring Plan**

There was a preconstruction conference held on March 14, 2012, attended by Rushforth, Malcolm, and Ground Support. (Dkt. No. 84-5.) During that meeting, the City of Seattle's shoring inspector, Michael Houlihan, pointed out that the side sewer had not been depicted in any of the shoring plans and instructed Rushforth to find it. (Dkt. No. 84-6 at 5.) Rushforth and Malcom met and reviewed the sewer card and determined that there was no conflict between the side sewer and the location of the tiebacks. (Dkt. No. 84-8 at 3.) Ground Support was not involved in this meeting. (*Id.*) However, unknown to any of the contractors because it was not recorded on the sewer card, the side sewer had been moved and was hit during construction. (Dkt. No. 84-10 at 1.)

On July 8, 2016, Liberty Mutual filed an amended complaint to include Ground Support as a defendant. (Dkt. No. 54.) Liberty Mutual filed two causes of action against Ground Support:

ORDER GRANTING DEFENDANT GROUND
SUPPORT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 3

1 warranty and contractual indemnification and negligence. (*Id.* at 10–11.) Plaintiff alleges that it

2 is entitled to "indemnification from Ground Support under the terms of the Master Agreement

3 and/or the Purchase Order." (Dkt. No. 54 at ¶ 9.5.) Plaintiff also alleges that Ground Support was

4 negligent in its preparation of the shoring plan, (*id.* at 10), and did not inform Malcolm that it

5 failed to depict the outdated location of the sewer line on the shoring plan until February 2014,

6 (Dkt. No. 65-1 at 2–3). Ground Support now moves for summary judgment on these two claims

7 and for sanctions. (Dkt. No. 83.)

8 **II.    DISCUSSION**

9      **A.    Legal Standard**

10      "The court shall grant summary judgment if the movant shows that there is no genuine

11 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12 Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable

13 inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v.*

14 *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly

15 made and supported, the opposing party "must come forward with 'specific facts showing that

16 there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

17 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the

18 outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence

19 for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49.

20 Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not

21 be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990). Ultimately,

22 summary judgment is appropriate against a party who "fails to make a showing sufficient to

23 establish the existence of an element essential to that party's case, and on which that party will

24 bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

25      **B.    Indemnification**

26      The indemnification claim turns on what agreement the parties assented to: the Master

ORDER GRANTING DEFENDANT GROUND
SUPPORT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 4

1   Agreement or the Purchase Order. As a preliminary matter, there is no evidence that Ground

2   Support ever saw or assented to the terms of the Purchase Order for this project. In fact, the

3   evidence proves otherwise. (Dkt. No. 84-14 at 11 (Malcolm responded "there is no record of

4   transmittal [of the Purchase Order] . . . to Ground Support.")). Therefore, the Purchase Order

5   terms do not govern this dispute.

6        Ultimately, the issue is whether Malcolm accepted the terms of the Master Agreement.

7   An enforceable contract requires mutual assent, which generally takes the form of offer and

8   acceptance. *Hansen v. Transworld Wireless TV-Spokane, Inc.*, 44 P.3d 929, 937 (Wash. Ct. App.

9   2002) (citing *Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245,

10  255 (Wash. 1993)). "Acceptance is an expression (communicated by word, sign, or writing to the

11  person making the offer) of the intention to be bound by the offer's terms." *Veith v. Xterra*

12  *Wetsuits, L.L.C.*, 183 P.3d 334, 337 (Wash. Ct. App. 2008). Silence may also constitute an

13  acceptance where because of previous dealings, it is reasonable that the offeree should notify the

14  offeror if she does not intend to accept. Restatement (Second) of Contracts § 69 (1981).

15       Here, the evidence shows that it was common for Ground Support to perform work for

16  Malcolm without a signed Master Agreement being returned. (Dkt. No. 84-11 at 3; Dkt. No. 89

17  at 15–16.) This relationship has existed this way since approximately 1994. (Dkt. No. 84-11 at

18  3.) Liberty Mutual cites to no evidence to the contrary. Therefore, silence here constitutes

19  acceptance because of previous dealings. It was reasonable to expect that Malcolm would have

20  had to notify Ground Support if it did not intend to accept the terms of the Master Agreement.

21  Therefore, the Master Agreement terms govern this dispute.

22       Liberty Mutual seems to argue that emails sent in 2014 create a dispute whether the

23  parties had concluded the Master Agreement negotiations in 2011. (Dkt. No. 88 at 13, 15 (citing

24  Dkt. No. 84-13)). However, this argument is unpersuasive. The evidence shows that the Master

25  Agreement was renegotiated in 2010. (Dkt. No. 67 at ¶ 7; Dkt. No. 84-12 at 4.) Negotiations in

26  2014, without any link to the 2010 negotiations or 2011 proposal, have no bearing on what terms

ORDER GRANTING DEFENDANT GROUND
SUPPORT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 5

1    governed the project in 2011 and 2012. There is no evidence the 2011 terms were not final.

2        Liberty Mutual also argues "the parties agreed, at a minimum, that Ground Support

3    would indemnify Malcolm Drilling for damages arising out of Ground Support's work . . . . As

4    such, a viable equitable indemnity claim exists."[2] (Dkt. No. 88 at 15.) However, equitable

5    indemnity does not apply where an express contract that was assented to—here the Master

6    Agreement—exists. *See, e.g.*, *Chandler v. Washington Toll Bridge Auth.*, 137 P.2d 97, 103

7    (Wash. 1943).

8        The Master Agreement contains a Limitation of Remedies clause that provides a one year

9    time period from the substantial completion of Ground Support's services to bring a claim

10   arising out of Ground Support's services. (Dkt. No. 58-1 at 8.) Here, the work was substantially

11   completed in May 2012. (Dkt. No. 54 at ¶¶ 3.1–3.14.) Liberty Mutual did not bring the

12   indemnification claim against Ground Support until July 2016. (*See* Dkt. No. 54.) Therefore,

13   Liberty Mutual's indemnification claim against Ground Support is time barred. Ground

14   Support's motion for summary judgment on the indemnification claim is GRANTED.

15       **C.    Negligence**

16       Ground Support argues the negligence claim should be dismissed because it is time

17   barred and Liberty Mutual cannot establish proximate cause. (Dkt. No. 83 at 14–24.) In

18   Washington, negligence claims are subject to the three-year statute of limitations. Wash. Rev.

19   Code. § 4.16.080. "[A] cause of action in a negligence case accrues when a plaintiff discovers or

20   ───────────────────────────────
     [2] Ground Support responded to this argument it its reply brief. (Dkt. No. 91 at 8–9.) Liberty
21   Mutual moved to strike this argument because it was raised for the first time in Ground Support's
     reply. Like its previous surreply, Liberty Mutual seems to misunderstand what constitutes new
22   facts or arguments. Liberty Mutual raised the equitable indemnity claim it its opposition.
     Therefore, it is entirely logical that Ground Support would respond to that argument in its reply.
23   Moreover, Liberty Mutual's surreply is an attempt to provide the court with extraneous
     argument, which is explicitly not allowed. *See* W.D. Wash. Local Civ. R. 7(g)(1). Therefore,
24   Liberty Mutual's request to strike Ground Support's equitable indemnity arguments is DENIED.

25   Liberty Mutual also moves to strike "new" evidence submitted with Ground Support's reply.
     However, the Court did not rely on this evidence in this order. The request to strike is
26   DISMISSED as moot.

1    reasonably should have discovered the essential elements of negligence, *i.e.*, duty, breach,

2    causation and damages." *Reichelt v. Johns-Manville Corp.*, 733 P.2d 530, 534 (Wash. 1987) (en

3    banc). The question of whether a plaintiff exercised reasonable diligence is a question of fact.

4    *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1308 (9th Cir. 1992) (citing *Timmel v.*

5    *Moss,* 803 F.2d 519, 521 (9th Cir.1986)). Plaintiff's reasonableness is only a question of law

6    when the evidence establishes "beyond dispute" that the plaintiff has failed to bring the action

7    within the statute of limitations. *See Timmel*, 803 F.2d at 521 (citations omitted).

8         Liberty Mutual's negligence claim stems from Ground Support's failure to include the

9    sewer line on its shoring plan. (Dkt. No. 54 at 10.) Liberty Mutual believes that the City, not the

10   other contractors, had to know about the negligence claim in order for it to be discoverable. (Dkt.

11   No. 88 at 18.) It argues this required the City to know that Ground Support independently

12   obtained the sewer card but failed to include the sewer line in its plans. (*Id.*) Liberty Mutual

13   alleges the evidence shows the City of Seattle's cause of action accrued at the earliest in

14   February 2014. (*Id.* (citing Dkt. No. 65-1 at 25)). However, whether or not Ground Support was

15   negligent for failure to include the sewer line does not hinge on whether it independently

16   obtained the sewer line information. Assuming without deciding that the City's knowledge was

17   dispositive, the evidence demonstrates beyond dispute that all parties knew about a potential

18   negligence claim against Ground Support by May 2013.

19        At the pre-construction meeting on March 14, 2012, the City's inspector, Mr. Houlihan,

20   knew that Ground Support did not include the sewer line on its shoring plan. (Dkt. No. 84-6 at 4–

21   5.) On September 26, 2012, after striking the sewer line, Malcolm's Vice President and Project

22   Manager, John Schneider, believed that Ground Support shared responsibility with Core Design

23   for the sewer strike. (Dkt. No. 84-11 at 6 (referencing Dkt. No. 84-17 at 2)). On October 1, 2012,

24   Mr. Schneider emailed Malcolm's President and Corporate President, and relayed that Ground

25   Support would accept responsibility for not plotting the sewer line on its shoring plan. (Dkt. No.

26   84-18.) On May 23, 2013, Rushforth's Project Manager, Dennis Dowell, alerted Ground

1  Support, Malcolm, and Core Design that the City believed Rushforth needed to repair the sewer

2  and that it "might be prudent to notify your insurance companies." (Dkt. No. 84-20 at 4.)

3  Therefore, at the latest, the negligence claim against Ground Support began tolling in May 2013.

4  Liberty Mutual did not file this claim until July 2016. (*See* Dkt. No. 54.) Therefore, the

5  negligence claim is time barred and Ground Support's motion for summary judgment on this

6  claim is GRANTED.[3]

7  **D.   Sanctions**

8  Ground Support also requests that the Court sanction Liberty Mutual under Federal Rule

9  of Civil Procedure 56(h). (Dkt. No. 83 at 11–14.) Ground Support claims Liberty Mutual's

10  indemnification claim was "baseless" and that it deceived the Court to defeat the previous

11  motion for summary judgment on the claim. (*Id.* at 11.) Although the evidence is now clear that

12  Liberty Mutual's indemnification claim is without merit, Ground Support's first motion was filed

13  almost immediately after the complaint and with very little discovery completed. The Court is

14  unpersuaded by Ground Support's arguments regarding Liberty Mutual's bad faith in

15  maintaining the claim. Therefore, the request for sanctions is DENIED.

16  **III.   CONCLUSION**

17  For the foregoing reasons, Ground Support's motion for summary judgment is

18  GRANTED and motion for sanctions is DENIED.

19  DATED this 15th day of June 2017.

20

21

22

23  John C. Coughenour
    UNITED STATES DISTRICT JUDGE

24  _____

25  [3] Liberty Mutual argues equitable tolling is appropriate in this case. (Dkt. No. 88 at 18 (citing Dkt. No. 65 at 11–12)). Among other things, Liberty Mutual argues Ground support "remained silent" during the investigation. (Dkt. No. 65 at 11.) However, the evidence does not support this.

26  The Court rejects Liberty Mutual's equitable tolling argument.

ORDER GRANTING DEFENDANT GROUND
SUPPORT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 8